**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LANCE BROWN, AMON GORDON, and CHARLES GRANT, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br> v.<br><br> THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN, THE NFL PLAYER DISABILITY AND NEUROCOGNITIVE BENEFIT PLAN, THE RETIREMENT BOARD OF THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN, and THE DISABILITY BOARD OF THE NFL PLAYER DISABILITY AND NEUROCOGNITIVE BENEFIT PLAN,<br><br>  Defendants. | Case No.<br><br> **CLASS ACTION COMPLAINT** |

Plaintiffs Lance Brown, Amon Gordon, and Charles Grant, through their counsel, on behalf of themselves and all others similarly situated, bring this class action complaint under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and allege as follows:

**INTRODUCTION**

1. From 1962 through 2014, players in the National Football League ("NFL") earned vested rights to disability benefits under the Defendant Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Retirement Plan"). Since at least 1994, the Retirement Plan has protected these vested benefits, including by prohibiting plan amendments that deprive a player of any rights or benefits irrevocably vested in him under the Plan, and by providing that in the event of a transfer

- 1 -

of Retirement Plan liabilities to any other plan, the benefit to which each Player is entitled will not be reduced. But effective January 1, 2015, the Retirement Plan was amended in violation of these protections to transfer its liabilities for certain disability benefits to the Defendant NFL Player Disability and Neurocognitive Benefit Plan ("Disability Plan"), which does not contain these protections. As a result, players who receive their disability benefits from the Disability Plan are in peril of reduction or elimination of those benefits — even those players who vested in their rights to receive those benefits under the Retirement Plan before January 1, 2015. That peril will become reality beginning January 1, 2021, when a series of reductions to Disability Plan benefits will commence, including a reduction of total and permanent disability ("T&P") benefits by the amount of any Social Security disability benefits that a player receives, a drastic reduction in the minimum benefit amount for line-of-duty disability ("LOD") benefits, and ultimately elimination of eligibility for T&P disability benefits based on Social Security disability eligibility. Plaintiffs Lance Brown, Amon Gordon, and Charles Grant (collectively "Plaintiffs"), all of whom vested in their right to disability benefits under the Retirement Plan before January 1, 2015, and all of whom receive disability benefits from the Disability Plan now, bring this action to require that their benefits be paid from the Retirement Plan and to clarify that such benefits are protected from reduction.

## **JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and the specific jurisdictional statute for claims brought pursuant to ERISA, ERISA § 502(e)(1) and (f), 29 U.S.C. § 1132(e)(1) and (f).

3.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Retirement Plan and the Disability Plan are administered in part in this

District, some of the breaches alleged took place in this District, and one or more Defendants may be found in this District.

## PARTIES

4.    Plaintiff Lance Brown is a participant in the Retirement Plan and the Disability Plan. He has been a Vested Player under the Retirement Plan since 1998. During his career, Mr. Brown played for the Buffalo Bills, Pittsburgh Steelers, New York Jets, and Arizona Cardinals. As of October 1, 2018, the Disability Initial Claims Committee determined that he was totally and permanently disabled, and placed him in the Inactive B category. However, his T&P disability benefits have been paid from the Disability Plan rather than the Retirement Plan as a result of unlawful changes to the Retirement Plan effective January 1, 2015, which stripped him of contractually vested rights to T&P disability benefits under the Retirement Plan. Mr. Brown resides in Chandler, Arizona.

5.    Plaintiff Amon Gordon is a participant in the Retirement Plan and the Disability Plan. He has been a Vested Player under the Retirement Plan since at least 2010. During his career, Mr. Gordon played for the Cleveland Browns, Denver Broncos, Baltimore Ravens, Tennessee Titans, Seattle Seahawks, and Kansas City Chiefs. As of August 1, 2016, the Disability Initial Claims Committee determined that he was totally and permanently disabled, and placed him in the Inactive A category. However, his T&P disability benefits have been paid from the Disability Plan rather than the Retirement Plan as a result of unlawful changes to the Retirement Plan effective January 1, 2015, which stripped him of contractually vested rights to T&P disability benefits under the Retirement Plan. Because his benefit is paid from the Disability Plan rather than from the Retirement Plan, Mr. Gordon will face a drastic reduction in his monthly disability benefit effective January 1, 2021, when the Disability Plan will begin reducing that benefit by the amount of his monthly Social Security disability benefit. Mr. Gordon resides in San Diego, California.

6.     Plaintiff Charles Grant is a participant in the Retirement Plan and the Disability Plan. He has been a Vested Player under the Retirement Plan since at least 2005. During his career, Mr. Grant played for the New Orleans Saints and Chicago Bears. As of May 1, 2016, the Disability Initial Claims Committee determined that he was totally and permanently disabled, and placed him in the Inactive A category. However, his T&P disability benefits have been paid from the Disability Plan rather than the Retirement Plan as a result of unlawful changes to the Retirement Plan effective January 1, 2015, which stripped him of contractually vested rights to T&P disability benefits under the Retirement Plan. Because his benefit is paid from the Disability Plan rather than from the Retirement Plan, Mr. Grant will face a drastic reduction in his monthly disability benefit effective January 1, 2021, when the Disability Plan will begin reducing that benefit by the amount of his Social Security disability benefit. Mr. Grant resides in Washington, D.C.

7.     Defendant Retirement Plan is an employee pension benefit plan as defined by ERISA § 3(2), 29 U.S.C. § 1002(2), and a multiemployer plan within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A). The Retirement Plan is sponsored by Defendant Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Retirement Board"). The Retirement Plan is a defined benefit pension plan, meaning that each participating employee is entitled to a fixed periodic payment during retirement based on a pension calculation formula set forth in the Plan. The Retirement Plan is also an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), in that it provides benefits in the event of disability. The Retirement Plan is named herein as a necessary party for the relief requested.

8.     Attached hereto as Exhibit A is a true and correct copy of the Retirement Plan as amended and restated effective April 1, 2012.

- 4 -

9. Attached hereto as Exhibit B is a true and correct copy of the Retirement Plan as amended and restated effective April 1, 2014.

10. Defendant Retirement Board is the Plan Administrator of the Retirement Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

11. Defendant Disability Plan is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), and a multiemployer plan within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A). The Disability Plan is sponsored by the Disability Board of the NFL Player Disability and Neurocognitive Benefit Plan ("Disability Board").

12. Attached hereto as Exhibit C is a true and correct copy of the Disability Plan as amended and restated effective April 1, 2019.

13. Defendant Disability Board is the Plan Administrator of the Disability Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

## FACTUAL ALLEGATIONS

### The Retirement Plan

14. In 1962, the Bert Bell NFL Player Retirement Plan was established to provide retirement, disability, and death benefits to NFL players and their beneficiaries.

15. The Pete Rozelle NFL Player Retirement Plan was established to provide the same benefits to NFL players and their beneficiaries beginning in 1989.

16. Effective March 30, 1994, the two then-existing plans merged to form the Retirement Plan.

17. The Retirement Plan's Plan Year runs from April 1 to March 31.

18. Since at least March 30, 1994, the Retirement Plan has provided benefits on the following terms:

- 5 -

2050690.1

a. A Vested Player includes, among others, a player with three Credited Seasons, including one after the 1992 Plan Year; and a player who, after receiving T&P disability benefits under the Retirement Plan, is found to no longer qualify for total and permanent disability.

b. A Credited Season is a Plan Year in which a Player is an Active Player on the date of three or more Games, or meets certain other criteria. A Game is any regular-season NFL game and any post-season NFL game except the Pro Bowl.

c. An Active Player under the Retirement Plan is a Player who is obligated to perform football playing services under a contract with an NFL member club. For purposes of disability benefits, Active Player also includes a Player who is no longer obligated to play under such a contract, but is between the expiration or termination of his last contract and the later of the July 15 following the expiration or termination or the first day of preseason training camp.

d. Article 4 of the Retirement Plan provides a monthly pension, referred to as a Benefit Credit Pension in some iterations of the Retirement Plan, commencing at or after a Vested Player's Normal Retirement Date, which is the first of the month coinciding with or next following his fifty-fifth birthday. Certain Vested Players can receive a reduced early pension starting as early as their forty-fifth birthdays. A pension is payable for the life of the Player and, in some cases, the life of his surviving spouse.

e. The amount of a monthly pension or Benefit Credit Pension is based on the sum of a Player's Benefit Credits.

f. A Benefit Credit is a fixed dollar amount for each of a Player's Credited Seasons.

- 6 -

g.      Once a Player is a Vested Player, his Benefit Credits are nonforfeitable -
that is, his Benefit Credits cannot be reduced, including by an amendment to the Retirement
Plan.

h.      Article 5 of the Retirement Plan provides a T&P disability benefit to any
Active Player or Vested Inactive Player who is determined by the Retirement Board or the
Disability Initial Claims Committee to be totally and permanently disabled before his
Normal Retirement Date or the date he commences an early pension.

i.      Like a Benefit Credit Pension, the amount of a T&P disability benefit is
based on the sum of the Player's Benefit Credits, subject to minimum benefit amounts for
certain categories of totally and permanently disabled Players.

j.      Total and permanent disability under the Retirement Plan means that Player
is prevented from or unable to engage in any occupation or employment for remuneration
or profit.

k.      Total and permanent disability benefits are payable for life or until cessation
of the total and permanent disability, and are coordinated with retirement benefits.

l.      Until January 1, 2015, the Retirement Plan also provided a LOD disability
benefit under certain circumstances. The LOD disability benefit is also based on a Player's
Benefit Credits and is payable for the duration of the Player's disability, up to ninety
months.

19.     Not later than August 1, 2011, Article 5 of the Retirement Plan was amended to
provide that a Vested Inactive Player or Active Player who is receiving either Social Security
Disability Insurance benefits or Supplemental Security Income benefits will be deemed to be
totally and permanently disabled for purposes of the Retirement Plan, subject to a limited

- 7 -

2050690.1

exception. Thus, as of August 2011, a Vested Inactive Player or Active Player is entitled to a T&P disability benefit under the Retirement Plan if either (a) the Retirement Board or Disability Initial Claims Committee determines him to be totally and permanently disabled under the Retirement Plan's standard; or (b) the Social Security Administration determines him to be disabled under its standard, which is the inability to engage in "any substantial gainful activity." 42 U.S.C. § 423(d)(1)(A).

## Limitations on the Power to Amend the Retirement Plan

20.     Since at least 1994, Article 10 of the Retirement Plan has given the Retirement Board authority to amend the Retirement Plan, subject to limitations including that an amendment may not reduce the value of any benefit already earned and otherwise payable under the Plan.

21.     Since at least 1994, Article 10 has provided that in the event of a transfer of Retirement Plan liabilities to any other plan, the benefit to which each Player is entitled will not be reduced.

22.     Until 2001, the Retirement Plan provided that in addition to the Retirement Board, the Players Association and Management Council could also jointly amend the Retirement Plan, but only to (a) change the vesting schedule, (b) increase and revise benefits, (c) impose and remove limits on maximum benefits, and (d) expand coverage. Effective April 1, 2001, the Retirement Plan was amended to eliminate these restrictions on the joint amendment power of the Players Association and Management Council.

23.     Since at least 1994, the Retirement Plan has provided that no amendment, whether by the Retirement Board or the Players Association and the Management Council, may operate to deprive a Player of any rights or benefits irrevocably vested in him under the Plan.

**The Disability Plan**

24.     In 1993, the Players Association and the Management Council established the Disability Plan, which was at that time called the NFL Player Supplemental Disability Plan.

25.     In 2011, the Disability Plan was renamed the NFL Player Supplemental Disability and Neurocognitive Benefit Plan.

26.     The 2011 Disability Plan incorporated terms from the Retirement Plan, including the definitions of "Active Player," "Benefit Credit," "Credited Season," and "Vested Inactive Player," but did not include a definition of "Vested Player" and did not provide that Benefit Credits become nonforfeitable.

27.     Article 3 of the 2011 Disability Plan provided for a fixed minimum benefit for certain categories of Players who were receiving T&P disability benefits under the Retirement Plan. Under Article 3, such Players received the difference between the minimum benefit and the Retirement Plan benefit.

28.     For other categories of Players, Article 3 of the 2011 Disability Plan provided for a fixed benefit of $1,667 per month in addition to the T&P disability benefit under the Retirement Plan.

29.     Both types of supplemental benefits under Article 3 of the 2011 Disability Plan were set to sunset as of March 31, 2021.

30.     The 2011 Disability Plan gave the Players Association and the Management Council joint plenary authority to amend the Disability Plan.  Upon information and belief, the 2011 Disability Plan contained no prohibitions on amendments that reduce benefits or deprive Players of rights and benefits.

**The 2014 Transfer of Liabilities From the Retirement Plan to the Disability Plan**

31.     In 2014, the Retirement Plan was amended to provide that effective January 1, 2015, it would no longer pay T&P disability benefits for new claims, and would no longer pay LOD disability benefits at all.

32.     Effective April 1, 2014, the Disability Plan was renamed the NFL Player Disability and Neurocognitive Benefit Plan.

33.     The 2014 Disability Plan continued to use the Retirement Plan's definitions of "Active Player," "Benefit Credit," "Credited Season," and "Vested Inactive Player," while omitting "Vested Player" and the provision for nonforfeitability of Benefit Credits.

34.     The 2014 Disability Plan incorporated, as Article 3, the substance of the T&P disability provisions of the Retirement Plan's Article 5, including the provision that T&P disability benefits are payable until the Player is no longer disabled or dies.

35.     The 2014 Disability Plan moved the supplemental disability provisions to Article 4, and provided that they were only available to participants who applied before January 1, 2015.

36.     The 2014 Disability Plan still did not contain prohibitions on amendments that reduce benefits or deprive Players of rights and benefits.

37.     By eliminating T&P disability benefits under the Retirement Plan for Players who apply after January 1, 2015, and by eliminating all LOD disability benefits under the Retirement Plan, the 2014 Retirement Plan amendments caused a forfeiture of Benefit Credits as of January 1, 2015, in violation of the Retirement Plan provision that a Vested Player's Benefit Credits are nonforfeitable. Vested Players forfeited their Benefit Credits in that their Benefit Credits no longer counted toward T&P disability benefits and LOD disability benefits under the Retirement Plan.

38.     By eliminating T&P disability benefits under the Retirement Plan for Players who apply after January 1, 2015, and by eliminating all LOD disability benefits under the Retirement

- 10 -

2050690.1

Plan, the 2014 Retirement Plan amendments deprived Plaintiffs and class members of rights and benefits irrevocably vested in them under the Retirement Plan, in violation of Article 10's prohibition on such amendments.

39.     By eliminating LOD disability benefits entirely under the Retirement Plan as of January 1, 2015, the 2014 Retirement Plan amendments reduced the value of benefits already earned and payable under the Retirement Plan, in violation of Article 10's limitation on the Retirement Board's power to amend the Retirement Plan.

40.     By transferring liability to the Disability Plan for T&P disability benefits for Players who apply after January 1, 2015, and for all LOD disability benefits, the 2014 Retirement Plan amendments effected a transfer of liabilities that reduced benefits to which Plaintiffs and class members were entitled under the Retirement Plan, in violation of the Retirement Plan's prohibition on such transfers. The transfer reduced benefits because the Disability Plan lacks the vesting protections afforded to benefits under the Retirement Plan.

**Defendants' Representations Regarding Vesting of Disability Benefits**

41.     Defendants Retirement Plan Board and Disability Plan Board, and their delegees, have consistently represented to participants in both plans that their T&P disability benefits are vested, even under the Disability Plan.

42.     By making the January 1, 2015 Retirement Plan changes apply only to those participants who had not yet applied for T&P disability benefits, the Retirement Plan terms recognize that at least those participants who had already applied for T&P disability benefits had vested in those benefits.

43.     Even after the purported transfer of T&P disability benefits to the Disability Plan for post-2014 applicants, the Disability Board and its delegees have continued to advise participants that their T&P disability benefits are vested, including by stating in "Income

- 11 -

Verification" letters that T&P disability benefits in specific amounts are "payable for life or cessation of the disablement," or that as to specific amounts of pension and disability benefits, "[b]oth benefits are payable for life"; and by sending benefit award notifications stating that the Disability Plan "provides that T&P disability benefits are payable for life or until the cessation of the T&P disablement." Moreover, none of those letters states that Disability Plan benefits may be reduced by amendment of the Disability Plan.

44.     As recently as July 2020, the NFL Player Benefits portal, available at nflplayerbenefits.com, stated that the "Duration of payments" for T&P benefits is "Monthly for life or until the end of the disablement."

## Impending 2021 Disability Benefit Cuts

45.     The March 15, 2020 collective bargaining agreement between the Players Association and the Management Council calls for drastic reductions in Disability Plan benefits, including the following changes:

      a.      Effective January 1, 2021, T&P benefits for each participant in the Inactive A classification will be reduced until age 65 by the amount of any monthly disability benefit that the participant receives under the Social Security Act.

      b.      Effective April 1, 2024, the option for eligibility for T&P disability benefits based on the Social Security Administration's determination of disability will be eliminated.

46.     A true and correct copy of excerpts of the NFL-NFLPA Collective Bargaining Agreement dated March 15, 2020, is attached hereto as Exhibit D.

47.     Plaintiffs are informed and believe, and based thereon allege, that these changes will reduce and then potentially eliminate T&P disability benefits for at least hundreds of participants currently receiving those benefits.

- 12 -

48.     Because of the Retirement Plan's vesting protections, these reductions do not apply to participants receiving their T&P disability benefits under the Retirement Plan, but only apply to those participants who are receiving or will receive T&P disability benefits under the Disability Plan as a result of the amendments to both plans effective January 1, 2015.

## TOLLING AND ADMINISTRATIVE EXHAUSTION

49.     Pursuant to ERISA § 503, 29 U.S.C. § 1133, and the Department of Labor regulations thereunder, 29 C.F.R. § 2560.503-1, the Retirement Plan provides for a two-step claim-and-appeal procedure.

50.     The Court should waive any requirement to exhaust this procedure because exhaustion would be futile, or else the Court should stay this litigation pending exhaustion.

## CLASS ACTION ALLEGATIONS

51.     Plaintiffs seek a class under Rule 23, Federal Rules of Civil Procedure § 23(b)(1) and (b)(2).

52.     The class is defined as all Retirement Plan participants who became Vested Players before January 1, 2015, had not applied for T&P disability benefits as of January 1, 2015, and are not yet receiving a Benefit Credit Pension from the Retirement Plan.

### A.     Numerosity (Rule 23(a)(1)):

53.     The Class is so numerous that joinder of all persons in the class is impracticable. As of March 2019, the Retirement Plan had 13,418 participants, including 6,790 vested inactive participants and 2,247 active participants. The Class consists of all vested inactive and active participants who vested before January 1, 2015, plus all participants currently receiving T&P or LOD disability benefits who vested before January 1, 2015 — altogether, likely at least hundreds of participants. Numerosity of the Class will be ascertained and confirmed by discovery. The

number and identity of the members of the class are readily determinable from the Retirement Plan's records.

**B.** **Commonality (Rule 23(a)(2)):**

54.     There are common questions of law and fact affecting the rights of the members of the Class, including, without limitation:

a.      Whether, before January 1, 2015, the Retirement Plan provided for contractual vesting of participants' right to receive T&P disability benefits under the Retirement Plan's terms;

b.      Whether, before January 1, 2015, the Retirement Plan provided for contractual vesting of participants' right to receive LOD disability benefits under the Retirement Plan's terms;

c.      Whether the Retirement Plan changes effective January 1, 2015, violated the Retirement Plan's terms by depriving Plaintiffs and Class members of rights or benefits irrevocably vested in them under the Plan;

d.      Whether the Retirement Plan changes effective January 1, 2015, violated the Retirement Plan's terms by causing a forfeiture of Benefit Credits;

e.      Whether the transfer of Retirement Plan liabilities to the Disability Plan effected a reduction in benefits to which Plaintiffs and Class Members were entitled, in violation of the Retirement Plan's terms.

**C.** **Typicality (Rule 23(a)(3)):**

55.     The claims of the named class representatives are typical of the claims of the proposed Class. Plaintiffs and all members of the proposed Class sustained the same or similar injuries arising out of and caused by Defendants' common course of conduct in violation of applicable Federal law, in that each Plaintiff and Class member suffered a loss of vested benefits

- 14 -

upon the transfer of disability benefits from the Retirement Plan to the Disability Plan. Plaintiffs' claims are thereby representative of, and co-extensive with, the claims of the proposed Class members.

**D.      Adequacy (Rule 23(a)(4) and 23(g)):**

56.     The named representatives will fairly and adequately protect the interests of the proposed Class. There are no conflicts between the interests of the named Class representatives and the other members of the proposed Class.

**E.      Rule 23(b)(1):**

57.     This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions by individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Specifically, separate actions by individual class members could produce varying adjudications as to, inter alia, whether Plaintiffs and Class Members vested in their rights to T&P disability benefits under the terms of the Retirement Plan and whether Plaintiffs and Class Members vested in their rights to LOD disability benefits under the terms of the Retirement Plan.

**F.      Rule 23(b)(2):**

58.     This action is maintainable as a class action under Rule 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, thereby making appropriate monetary, injunctive and other equitable relief in favor of the Class. In

- 15 -

particular, Defendants have treated all Class members as having forfeited their rights to T&P disability benefits and LOD disability benefits under the Retirement Plan as of January 1, 2015.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Claim for Clarification of Right to Future Benefits Under the Retirement Plan for Plaintiffs and Class Members Not Yet Receiving Benefits
ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**

59. Plaintiffs incorporate the above-referenced Paragraphs as though fully set forth herein.

60. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

61. As of December 31, 2014, Plaintiffs had earned vested rights to receive T&P disability benefits and/or LOD disability benefits under the terms of the Retirement Plan in the event that, in the future, they met the eligibility criteria for either or both benefits.

62. Plaintiffs' right to these future benefits vested because, inter alia, under the Retirement Plan's terms each Plaintiff's Benefit Credits became nonforfeitable upon his attainment of the status of Vested Player, which occurred before January 1, 2015.

63. The January 1, 2015 changes to the Retirement Plan caused a forfeiture of Plaintiffs' Benefit Credits to the extent that, after the changes, the Retirement Plan purports to provide that Plaintiffs' Benefit Credits no longer entitled them to disability benefits under the Retirement Plan in the event they meet the eligibility criteria for those benefits.

64. The January 1, 2015 changes to the Retirement Plan effected a transfer of liabilities from the Retirement Plan to the Disability Plan, which transfer reduced Plaintiffs' benefits under the Retirement Plan.

65. The January 1, 2015 changes to the Retirement Plan operated to deprive Plaintiffs of rights or benefits irrevocably vested in them under the Retirement Plan.

66. Because the Retirement Plan terms prohibited the January 1, 2015 benefit reductions, Plaintiffs are entitled to future T&P disability benefits and/or future LOD disability benefits under the Retirement Plan if and when they meet the eligibility criteria for those benefits.

### SECOND CLAIM FOR RELIEF

**Claim to Enforce Rights Under the Retirement Plan and for Clarification of Rights to Future Benefits Under the Retirement Plan for Plaintiffs and Class Members Already Receiving Benefits**
**ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**

67. Plaintiffs incorporate the above-referenced Paragraphs as though fully set forth herein.

68. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

69. As of December 31, 2014, Plaintiffs had earned vested rights to receive T&P disability benefits and/or LOD disability benefits under the terms of the Retirement Plan in the event that, in the future, they met the eligibility criteria for either or both benefits.

70. Plaintiffs' right to these future benefits vested because, inter alia, under the Retirement Plan's terms each Plaintiff's Benefit Credits became nonforfeitable upon his attainment of the status of Vested Player, which occurred before January 1, 2015.

71. Because Plaintiffs were Vested Players before January 1, 2015, their T&P disability benefits should have been paid under the Retirement Plan.

72. Because Plaintiffs' benefits were erroneously awarded under the Disability Plan instead of the Retirement Plan, those currently receiving Social Security disability benefits now

- 17 -

face a drastic reduction of their disability benefit effective January 1, 2021, and all Plaintiffs and class members are in jeopardy of future benefit reductions.

73.     The January 1, 2015 changes to the Retirement Plan caused a forfeiture of Plaintiffs' Benefit Credits to the extent that, after the changes, the Retirement Plan purports to provide that their Benefit Credits no longer entitled them to disability benefits under the Retirement Plan in the event they met the eligibility criteria for those benefits.

74.     The January 1, 2015 changes to the Retirement Plan effected a transfer of liabilities from the Retirement Plan to the Disability Plan, which transfer reduced Plaintiffs' benefits under the Retirement Plan.

75.     The January 1, 2015 changes to the Retirement Plan operated to deprive Plaintiffs of rights or benefits irrevocably vested in them under the Retirement Plan.

76.     Because the Retirement Plan terms prohibited the January 1, 2015 benefit reductions, Plaintiffs are entitled to have their disability benefits paid from the Retirement Plan, not the Disability Plan.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully pray for the following relief:

A.     An order certifying the Class as defined above, appointing Plaintiffs as the representatives of the Class, and appointing their counsel as Class Counsel;

B.     An order declaring that the January 1, 2015 changes to the Retirement Plan transferring disability benefit liabilities to the Disability Plan are void as to all Retirement Plan participants who became Vested Players before January 1, 2015;

- 18 -

C.     An order declaring that all participants currently receiving T&P disability benefits from the Disability Plan and who became Vested Players before January 1, 2015, shall receive those benefits from the Retirement Plan until death or cessation of disability;

D.     An order declaring that all participants currently receiving LOD disability benefits from the Disability Plan and who became Vested Players before January 1, 2015, shall receive those benefits from the Retirement Plan until death, cessation of disability, or expiration of the ninety-month maximum benefit period;

E.     An order declaring that all participants who became Vested Players before January 1, 2015, and who become eligible for T&P and/or LOD benefits under the terms of the Retirement Plan in the future, shall receive those benefits from the Retirement Plan;

F.     A preliminary and permanent injunction prohibiting the Disability Plan from paying T&P and LOD disability benefits on any terms other than those in the Retirement Plan before January 1, 2015, to participants who became Vested Players before January 1, 2015;

G.     A preliminary and permanent injunction prohibiting future reductions in T&P and LOD disability benefits under the Retirement Plan for participants who became Vested Players before January 1, 2015;

H.     An award of attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

I.     An award of pre- and post-judgment interest, to the extent allowable; and

J.     Such other further relief that the Court deems reasonable and just.

2050690.1

Respectfully submitted,

Date:  November 23, 2020    /s/ Mark D. DeBofsky

_____

Mark D. DeBofsky
mdebofsky@debofsky.com
Marie E. Casciari
mcasciari@debofsky.com
DEBOFSKY SHERMAN CASCIARI REYNOLDS P.C.
150 North Wacker Drive, Suite 1925
Chicago, Il 60606
Phone (312) 561-4040

Wendy R. Fleishman (*pro hac vice to be filed*)
Rachel Geman (*pro hac vice to be filed*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Teresa Renaker (*pro hac vice to be filed*)
RENAKER HASSELMAN SCOTT LLP
505 Montgomery Street, Suite 1125
San Francisco, California  94111
Telephone:  (415) 653-1733
Facsimile:  (415) 727-5079

*Counsel for Plaintiffs and the Proposed Class*

- 20 -

2050690.1